Matter of Bohlen v DiNapoli (2018 NY Slip Op 05720)





Matter of Bohlen v DiNapoli


2018 NY Slip Op 05720


Decided on August 9, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 9, 2018

525823

[*1]In the Matter of BRUCE D. BOHLEN et al., Petitioners,
v
THOMAS P. DiNAPOLI, as State Comptroller, et al., Respondents.

Calendar Date: April 30, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Pritzker, JJ.


DeGraff, Foy & Kunz, LLP, Albany (George J. Szary of counsel) and Port Authority of New York and New Jersey, New York City (Stephen Marinko of counsel), for petitioners.
Barbara D. Underwood, District Attorney, Albany (William E. Storrs of counsel), for respondents.



MEMORANDUM AND JUDGMENT
Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller excluding certain compensation from certain employees' final average salary in calculating retirement benefits.
The operations of the Port Authority of New York and New Jersey (hereinafter the Port Authority) suffered serious adverse consequences following the September 11, 2001 terrorist attack on the World Trade Center that resulted in the destruction of its headquarters, the loss of virtually all of its records and the
death of over 70 of its employees, including its Executive Director [FN1]. In the aftermath of this disaster, the Port Authority relied upon the expertise of 11 long-term, executive level key employees, all members of respondent New York State and Local Employees' Retirement System (hereinafter the Retirement System): petitioner Bruce D. Bohlen, petitioner Edward L. Jackson, petitioner Louis J. LaCapra, petitioner Jeffrey S. Green, petitioner Francis J. Lombardi, petitioner Charles R. McClafferty, petitioner Anthony G. Cracchiolo, petitioner Aaron P. Blanco, petitioner [*2]John F. Spencer, Lawrence S. Hofrichter and Ernesto L. Butcher.[FN2]
In 2002, the Port Authority elected to participate in a temporary retirement incentive program that was passed by the Legislature for employees who were members of the Retirement System but advised petitioners, who were all eligible to retire at that time without penalty, that they would be exempted from the program. Instead, the Port Authority offered each of them, in addition to their regular salary, a "parity" benefit described as a longevity allowance payment that was based on a percentage of their salary to be paid biweekly, provided that they continued their employment beyond December 31, 2002. Petitioners each signed memorandum agreements accepting the offer and the Port Authority began making longevity allowance payments to them under what it called an "Employee Retention Program."
Between 2003 and 2010, Bohlen, Jackson, Green, Lombardi, McClafferty, Cracchiolo, Blanco and Spencer retired from service and each received retirement benefits based upon the inclusion in their final average salaries of the longevity allowance payments. In 2012, LaCapra, Hofrichter and Butcher filed their retirement applications, but the Retirement System concluded that the longevity allowance payments were not includable in their final average salaries because they were paid "in anticipation of eventual retirement." The Retirement System also reevaluated the retirement benefits that were being paid to the other key employees and reached the same conclusion.
Petitioners challenged the determinations of the Retirement System and requested a hearing. Following a consolidated hearing, a Hearing Officer found that the Retirement System acted reasonably in excluding the longevity allowance payments in computing petitioners' final average salaries, consistent with the provisions of Retirement and Social Security Law § 431. Respondent Comptroller accepted the Hearing Officer's findings, and this CPLR article 78 proceeding ensued.
Petitioners maintain that the longevity allowance payments should have been included in the calculation of their final average salaries. We agree. There is no dispute that the 2002 enabling legislation establishing the retirement incentive authorized participating employers to determine which titles would be eligible. To that end, the Port Authority was authorized to determine that petitioners — all recognized as key employees eligible to retire — would be ineligible for the program. Nonetheless, the Port Authority entered into a memorandum agreement with each petitioner that provided for a "longevity allowance in consideration of [petitioners] not retiring" (emphasis added). The "consideration" factor is significant for the Port Authority was entitled to exclude petitioners from the retirement incentive without providing any consideration, regardless of whether petitioners intended to retire at that time. By its terms, the memorandum explains that the longevity allowance would make petitioners' pension calculation "roughly equivalent" to what it would have been under the retirement incentive, provided that they remained employed for three years beyond December 31, 2002. Significantly, the [*3]additional payments were made on a biweekly basis in the same way as regular salary for services as they were performed.
In our view, these payments are more appropriately characterized as payments genuinely made to delay petitioners' retirements, not to artificially inflate their final average salary in anticipation of retirement. We see the primary purpose of the memorandum agreement as twofold — to retain key employees following the September 11, 2001 terrorist attack and to adequately compensate petitioners for their dedication and commitment to remain in their vital positions (see Matter of Curra v New York State Teachers' Retirement Sys., 30 AD3d 666, 666-667 [2006]; Matter of Van Haneghan v New York State Teachers' Retirement Sys., 6 AD3d 1019, 1021 [2004]). This is certainly neither a lump-sum payment on the eve of retirement nor a disproportionate salary increase designed to artificially inflate a pension benefit that would be properly excluded from the computation of the final average salary (compare Matter of Chichester v DiNapoli, 108 AD3d 924, 925 [2013]; Matter of Thompson v New York State Teachers' Retirement Sys., 78 AD3d 1456, 1457 [2010]). The statute squarely precludes "any additional compensation paid in anticipation of retirement" from an employee's salary base for purposes of computing the employee's retirement benefit (Retirement and Social Security Law § 431 [3]). In that regard, it is telling that both the Retirement System and the Hearing Officer, whose recommendation the Comptroller adopted, characterized the payments as having been made "in anticipation of eventual retirement" (emphasis added). The term "eventual" is not part of the statutory standard and actually reflects the Comptroller's own recognition that there was no actual retirement date anticipated in the memorandum agreement. Further, that temporal qualification is consistent with the Port Authority's key objective to further delay petitioners' retirements, not to artificially inflate an impending pension. Given this context and the language of the memorandum agreement, we conclude that the Comptroller's determination to uphold the Retirement System's exclusion of these payments from the computation of petitioners' pension benefits is not supported by substantial evidence. As such, the Retirement System must recalculate petitioners' final average salaries for the purpose of computing their retirement benefits. Having so concluded, we need not address petitioners' remaining argument that the Comptroller's determination violated the constitutional rights of the six petitioners who joined the Retirement System prior to June 17, 1971.
Devine and Pritzker, JJ., concur.




Clark, J. (dissenting).


Because we would confirm the determination of respondent Comptroller, we respectfully dissent.
We are mindful of the impact that the confirmation of the Comptroller's determination would have on petitioners' respective retirement benefits and that petitioners, having retired years ago, have likely come to rely on that income. And, we appreciate the value of petitioners' expertise and continued employment at the Port Authority of New York and New Jersey (hereinafter the Port Authority) following the devastating terrorist attack on September 11, 2001. However, what we are confronted with in this case requires us to be equally mindful that Retirement and Social Security Law § 431 furthers the legislative goal of protecting pension funds and ensuring the continued financial viability of respondent New York State and Local Employees' Retirement System (hereinafter the Retirement System) (see Abbatiello v Regan, 205 AD2d 1027, 1029 [1994], lv denied 84 NY2d 808 [1994]; Matter of Hohensee v Regan, 138 AD2d 812, 814 [1988], lv denied 72 NY2d 807 [1988]; see generally Matter of Galanthay v New [*4]York State Teachers' Retirement Sys., 50 NY2d 984, 986 [1980]), and of the considerable deference that this Court affords to the Comptroller's interpretation of statutes that he is charged with administering, including Retirement and Social Security Law § 431 (see Matter of Porco v New York State Teachers' Retirement Sys., 140 AD3d 1457, 1458 [2016]; Matter of Brandt v DiNapoli, 126 AD3d 1165, 1166 [2015], lv denied 26 NY3d 904 [2015]).
We disagree with the majority that the longevity allowance payments should have been included in the calculations of petitioners' final average salaries. "[A] member's retirement benefit is based upon his or her final average salary, i.e., 'the average salary earned by such . . . member during any three consecutive years which provide the highest average salary'" (Matter of Chichester v DiNapoli, 108 AD3d 924, 925 [2013], quoting Retirement and Social Security Law § 443 [a]; see Matter of Wartko v New York State Teachers' Retirement Sys., 121 AD3d 1484, 1485 [2014]). Pursuant to Retirement and Social Security Law § 431 (3), a member's final average salary must, as relevant here, exclude "any additional compensation paid in anticipation of retirement" (see Matter of Hughes v McCall, 245 AD2d 904, 905 [1997]; Matter of Green v Regan, 103 AD2d 878, 878 [1984]). In determining what constitutes "additional compensation paid in anticipation of retirement" (Retirement and Social Security Law
§ 431 [3]), courts "must look to the substance of the transaction," beyond any label given to the compensation by the parties (Matter of Green v Regan, 103 AD2d at 878-879; see Matter of Franks v DiNapoli, 53 AD3d 897, 898 [2008]; Matter of Davies v New York State & Local Police & Fireman Retirement Sys., 259 AD2d 912, 914 [1999], lv denied 93 NY2d 810 [1999]). "As our case law makes clear, 'the Comptroller is vested with exclusive authority to determine applications for retirement benefits and such determination, if supported by substantial evidence, must be upheld' — even if other evidence in the record could support a contrary result" (Matter of Chichester v DiNapoli, 108 AD3d at 925, quoting Matter of Davies v New York State & Local Police & Fireman Retirement Sys., 259 AD2d at 913 [citations omitted]; see Matter of Tamucci v DiNapoli, 133 AD3d 960, 961 [2015]).
The record evidence established that the biweekly longevity allowance payments were intended, at least in part, to incentivize petitioners to continue their employment with the Port Authority beyond December 31, 2002, despite being eligible to retire without penalty at that time. However, contrary to the majority's opinion, the primary purpose of the longevity allowance payments was to make up for the lost enhancement to petitioners' final average salaries, which they would have otherwise received had the Executive Director of the Port Authority exercised his discretion differently and determined that they were eligible for the retirement incentive (see L 2002, ch 69). Indeed, in an August 2002 memorandum to the Executive Director, one of the petitioners — Louis J. LaCapra — recommended that a "compensation adjustment program" be developed so that key staff members who had forgone the option of retiring could "achieve [an] equivalent level of pension benefit." The Executive Director accepted this recommendation and, in a separate memorandum, announced the development of a retention program "intend[ed] to assure that . . . key staff members . . . [would] receive an equivalent level of pension benefits." Consistent with the internal memoranda, the "parity benefit" that was ultimately offered to and accepted by petitioners in December 2002 was specifically structured so that, if they remained employed by the Port Authority for three additional years, the longevity allowance payments would result in a "pension calculation . . . equivalent to the calculation [they would have had] if [they] had been eligible to retire with the incentive." Significantly, although the longevity allowance payments were based on a percentage of petitioners' salaries, ranging from 4.5% to 11%, these percentages were derived from the additional percentages that would have been added to their final average salaries under the retirement incentive.
Furthermore, petitioners did not forgo anything in exchange for the longevity allowance [*5]payments, beyond agreeing to remain employed by the Port Authority through December 31, 2002, which was merely weeks after they signed the letter agreements [FN3]. While, as the majority points out, the letter agreements stated that the longevity allowance payments were "in consideration of [petitioners] not retiring during December 2002," they also stated that the payments were offered "to prevent [petitioners] from being unfairly treated." No doubt the concern about unfair treatment was in reference to the Executive Director's prior determination that petitioners, as essential employees during a time of critical need, were ineligible for the retirement incentive in the first instance. Given their ineligibility, petitioners could not have received an enhancement to their final average salaries had they retired in December 2002. Moreover, the record does not reveal that, but for the offered longevity allowance payments, any of the petitioners intended to retire in December 2002. In fact, one petitioner testified that he had no intention of retiring at that time, regardless of whether he had been eligible for the retirement incentive or whether the longevity allowance payments had been available.
Although the longevity allowance payments were clearly intended to induce petitioners to remain employed after December 2002, the foregoing record evidence amply supports the conclusion that the primary purpose of the longevity allowance payments was to provide petitioners with an elevated level of compensation in retirement, whenever that might be. Accordingly, notwithstanding evidence in the record that could support a contrary conclusion, we find substantial evidence in the record to support the Comptroller's determination that the longevity allowance payments constituted "additional compensation paid in anticipation of retirement"[FN4] (Retirement and Social Security Law § 431 [3]) and, therefore, could not be included in the calculations of petitioners' final average salaries (see Matter of Thompson v New York State Teachers' Retirement Sys., 78 AD3d 1456, 1457 [2010]; compare Matter of Curra v New York State Teachers' Retirement Sys., 30 AD3d 666, 666-667 [2006]; Matter of Van Haneghan v New York State Teachers' Retirement Sys., 6 AD3d 1019, 1021 [2004]).
Nor do we find merit in the contention — advanced by six of the petitioners — that, because they became members of the Retirement System prior to June 17, 1971, the effective date of Retirement and Social Security Law § 431, application of the statute to them violates NY Constitution, article V, § 7. Under that constitutional provision, "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired" (NY Const, art V, § 7). The Court of Appeals has held that retroactive application of Retirement and Social Security Law § 431 to individuals who became members of a retirement system prior to its effective date violates this constitutional provision where it results in a "diminution and impairment of membership benefits" (Kleinfeldt v New York City Employees' Retirement Sys., 36 NY2d 95, 100 [1975]). However, the Court's holding in this regard is limited, insofar as a constitutional violation exists only where the member has a "vested right" to have the disputed compensation included in the [*6]calculation of his or her retirement benefits based upon an established practice or policy including like compensation that preceded the enactment of the statute (Matter of Weber v Levitt, 34 NY2d 797, 800 [1974]; see Matter of Hessel v New York City Employees' Retirement Sys., 33 NY2d 381, 385 [1974]; Kranker v Levitt, 30 NY2d 574, 575 [1972]).
Contrary to the contention of the six petitioners at issue, we find no support for the proposition that respondents bore the burden of establishing that Retirement and Social Security Law
§ 431 was merely a codification of an already existing policy or procedure of excluding compensation like the longevity allowance payments from a member's final average salary. Rather, the six petitioners bore the burden of proving that, prior to June 17, 1971, compensation like the longevity allowance payments had been included in a member's final average salary for the purposes of computing retirement benefits (see State Administrative Procedure Act § 306 [1]; Matter of Wilson v DiNapoli, 52 AD3d 931, 933 [2008]; Matter of Hughes v McCall, 245 AD2d at 904). As they did not meet this high burden, we cannot conclude that the Comptroller's determination violated the constitutional rights of the six petitioners who joined the Retirement System prior to June 17, 1971 (compare Kranker v Levitt, 30 NY2d at 575). Accordingly, as substantial evidence supports the Comptroller's determination to exclude the longevity allowance payments from petitioners' final average salaries and as the six petitioners who joined the Retirement System prior to June 17, 1971 failed to demonstrate that it would be unconstitutional to apply the prohibitions of Retirement and Social Security Law § 431 to them, we would confirm the Comptroller's determination.
McCarthy, J.P., concurs.
ADJUDGED that the determination is annulled, without costs, petition granted and matter remitted to respondents for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: The Port Authority owns the World Trade Center site.

Footnote 2: As noted, nine of the 11 key employees are named petitioners herein. Two of the employees, Hofrichter and Butcher, died prior to the commencement of this proceeding, and, therefore, the beneficiaries of their retirement benefits were named as petitioners instead. However, because it is the retirement benefits of the 11 key employees that are at issue herein, references to "petitioners" herein are to said 11 employees and not to the two named beneficiaries.

Footnote 3: Petitioners each signed letter agreements accepting the Port Authority's offer on or shortly before December 12, 2002.

Footnote 4: We find the majority's reliance on the Comptroller and Hearing Officer's use of the word "eventual" in describing petitioners' retirements to be misplaced. Such word choice does not alter the fact that the longevity allowance payments were designed in such a way as to afford petitioners roughly the same pension calculations that they would have received if they had been eligible for, and retired with, the retirement incentive.